ROBERT SUESS ET AL. *v*. E. ROSS VOGELGESANG, AS
EXECUTIVE DIRECTOR OF THE METROPOLITAN
PLANNING DEPT.

[No. 671A119. Filed April 17, 1972. Rehearing denied May 22, 1972. Transfer denied November 1, 1972.]

*Ronald S. Lieber, Eugene W. Lausch, Lieber & Neff,* of Indianapolis, for appellants.

*Nola A. Allen, John H. Baldwin,* of Indianapolis, for appellees.

SULLIVAN, J.—The Metropolitan Board of Zoning Appeals of Marion County, Indiana, granted a "Use" variance to appellants (Suess) sought for the purpose of utilizing residential premises as a physician's office. Certain remonstrators and the Metropolitan Planning Department (appellees herein) opposed such variance. It should be noted that the Planning Department based their opposition not upon violation of the Master Plan but rather upon the fact that Suess, a practicing physician, had razed a garage, had resurfaced the area thus vacated for parking purposes and had commenced remodeling the residential structure before seeking a variance or appropriate building permits.

## ABSENCE OF VERBATIM STATEMENT OF JUDGMENT NOT FATAL TO THIS APPEAL

Appellees correctly point out that appellants' brief is defective in that it does not, as required by Rule AP. 8.3(A)(4), set forth a verbatim statement of the judgment below. Said rule reads as follows:

"Arrangement and Contents of Briefs.

(A)  Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

\* \* \*

(4)  A statement of the case. The statement shall first indicate briefly the nature of the case, the course of proceedings, and its disposition in the court below, *including a verbatim statement of the* judgment." (Emphasis supplied)

To be sure, the directive of the rule concerning the statement of the judgment is unequivocal. While the absence of such statement from an appellant's brief clearly authorizes affirmance without consideration of the merits (*Hauser* v. *Markwell* (1942), 111 Ind. App. 420, 41 N. E. 2d 652), such affirmance is not mandatory. The dic-

tate of Rule 8.3(A)(4) is for the purpose of aiding and expediting appellate review and is founded upon the reality of appellate case loads and human time limitations. The requirement is thus a convenience to the reviewing court and is not jurisdictional. It is often a necessary convenience, however, such as when the precise words of the judgment are in issue or must be scrutinized to determine the exact relief granted or denied; or if multiple litigants are involved in order to determine for whom or against whom the judgment runs. Likewise, in certain actions such as proceedings for injunctive relief or for declaratory judgment, or as in *Hauser* v. *Markwell, supra,* for reformation of a contract for sale of real estate and for possession of the real estate and damages for wrongful detention, the verbatim statement of the judgment is not a mere formality. In those and similar instances, the precise phrasing of the judgment often times bears direct correlation to the argument of appellant. It is the judgment in such cases which gives meaning to the appellant's argument. Antithetically, where the relief granted or denied is basic and uncomplicated as here, i.e., a one sentence reversal of an administrative determination, the judgment is self-evident and implicit in the mere fact of appeal. Additionally, the judgment below, together with the findings and conclusions tending to support that judgment, are graciously provided by appellees' brief. Accordingly, we need not search the record therefor and thus turn to a consideration of the merits of appellants' contentions.

Only three of the four issues argued by appellants in their brief are properly before us. The first issue which concerns the failure of appellees' Petition for Writ of Certiorari to be verified was not set forth in appellants' Motion to Correct Error. Such contention is, therefore, waived. *Indiana Rules of Procedure,* TR. 59(G).

## JUDGMENT OF COURT BELOW CANNOT REST UPON ALLEGED ILLEGALITY IN BOARD'S FINDING THAT VARIANCE DID NOT INTERFERE SUBSTANTIALLY WITH COMPREHENSIVE METROPOLITAN PLAN

Appellants assert as error the following conclusion made by the reviewing court:

"That said decision is illegal, and was an abuse of the discretionary powers of the Board, as the evidence was contrary to their finding that the variance would not interfere with the Comprehensive Metropolitan Plan."

It must be pointed out that the Board did not, as stated by the reviewing court, find that the variance "would not interfere with the Comprehensive Metropolitan Plan." Rather, the Board found that the variance would not *substantially* interfere. We must thus agree with the contention of Suess in this regard. It is not every interference with the Comprehensive Plan which will preclude the granting of a zoning variance. The only burden upon a petitioner for a variance in this respect is that he show that it does not "substantially interfere." I.C. 1971, 18-7-2-71, Ind. Ann. Stat. § 53-969 (Burns 1971 Supp.)[1] Thus, the court's finding that "the evidence was contrary to [the Board's] finding that the variance would not interfere with the Comprehensive Metropolitan Plan" cannot properly serve as a basis for reversal of the Board's determination to grant the variance.

Further, no question with regard to "substantial interference" was before the Marion Superior Court. The Petition for Writ of Certiorari filed by the remonstrators-appellees did not attack the Board's determination upon that basis. Such question was, therefore, not a proper matter of con-

---

1. The variance proceedings in question was governed by Acts 1955, Chapter 283, Section 69, as last amended by Acts 1965, Chapter 434, Section 17 and as found in Burns Ind. Stat. Ann., § 53-969 prior to 1970. Subsequent amendments have not changed the "substantial interference" provision.

sideration for the reviewing court (*Kessler-Allisonville Civic League, Inc.* v. *Marion Co. Bd. of Zoning Appeals* (1965), 137 Ind. App. 610, 209 N. E. 2d 43), and the judgment cannot be affirmed upon a "substantial interference" finding.

If, therefore, the decision of the reviewing court is to be affirmed, it must be with respect to matters properly before that court. In this respect, the Petition for Writ of Certiorari was confined to two reviewable assertions of illegality.[2]

## EVIDENCE WAS SUFFICIENT TO SUPPORT BOARD'S FINDING OF HARDSHIP WITHOUT REGARD TO ALLEGED SELF-CREATED HARDSHIP, I.E., PREMATURE AND UNAUTHORIZED USE AND ALTERATION OF THE PREMISES BY PETITIONERS

A variance will not be granted unless application of the existing zoning classification will constitute unusual and unnecessary hardship. I.C. 1971, 18-7-2-71, Ind. Stat. ■ Stat. § 53-969 (Burns 1971 Supp.). Whether unnecessary hardship exists so as to authorize a variance, is a factual question to be determined by the Board in its discretion. *Nelson* v. *Bd. of Zoning Appeals* (1959), 240 Ind. 212, 162 N. E. 2d 449. No single fact determines the existence of such hardship but all relevant factors taken together must indicate that the property for which variance is sought cannot reasonably be put to conforming use. *City*

2. The Petition for Writ of Certiorari did contain an additional specification to the effect that the grant of the variance was an abuse of the Board's discretion and was arbitrary and capricious in that the evidence submitted in support of the variance was so meager that the finding of the Board did not rest upon a rational basis and that further the evidence submitted by remonstrators was of such weight as to require, as a matter of law, denial of the variance. Such specification is but a broadly stated conclusion of the petitioners, appellees here, and lacks the definiteness and clarity sufficient to permit intelligent review. *Bd. of Zoning Appeals* v. *Filis* (1965), 137 Ind. App. 217, 206 N. E. 2d 628; *Bd. of Zoning Appeals* v. *Moyer* (1940), 108 Ind. App. 198, 27 N. E. 2d 905. It does not set forth or specify the grounds of illegality, at least not as the very limited question of whether or not the Comprehensive Metropolitan Plan has or has not been substantially impaired.

of *E. Chicago* v. *Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N. E. 2d 459.

Appellees successfully contended before the reviewing court that Suess' created their own hardship in razing the garage, resurfacing for parking the area thus cleared, and commencing remodeling without first having obtained the requisite zoning variance and building permit and without first having apprised himself of the use restrictions imposed by recorded covenants. That contention in effect alleges, and the court below concluded, that the hardship, if any, existent with reference to the premises concerned was created by Suess' themselves. As supporting authority for the argument, appellees cite *Bd. of Zoning Appeals* v. *Waskelo* (1960), 240 Ind. 594, 168 N. E. 2d 72. That decision affirmed a denial of a variance upon the ground that a claim of hardship cannot be based upon a condition created by the owner. That case is clearly distinguishable not only because it was a review of a variance denial as opposed to a variance grant (see *Metropolitan Board of Zoning Appeals* v. *Standard Life Insurance Co.* (1969), 145 Ind. App. 363, 251 N. E. 2d 60) but also because the *only claimed* hardship in *Waskelo* was occasioned by the voluntary act of the petitioner in reducing by sale the size of the area for which variance was sought. The factual situation here presented is quite different.

In the instant case the evidence disclosed that within the immediate neighborhood are Naval Avionics—an industrial facility, a shopping center, two gasoline stations, several other businesses, and an apartment complex. The evidence further indicated that because of the small size of the residence upon the premises in question and the amount of traffic on the street which fronts the premises, sale of the property for residential purposes was nearly impossible and that the house had been offered for sale for a considerable period without success until purchase by the Suess. Such evidence places the instant case more in line with the *Nelson* case, *supra,* than with *Waskelo, supra.*

As stated in *Devon Civic League, Inc.* v. *Marion County Board of Zoning Appeals* (1967), 140 Ind. App. 519, 224 N. E. 2d 66:

> "The review by the Superior Court of Marion County is not a trial de novo and the reviewing Court cannot substitute its decision for that of the Board of Zoning Appeals. * * * The reviewing Court may not weigh the evidence submitted to the Board nor substitute its judgment or decision for that of the Board, but can only determine whether or not there is any substantial evidence of probative value which is competent as the foundation for the decision of the Board." 140 Ind. App. 519, 524-525. See also *R. J. Realty, Inc.* v. *Keith* (1969), 145 Ind. App. 314, 250 N. E. 2d 757; *Kessler-Allisonville Civic League, Inc.* v. *Marion County Board of Zoning Appeals, supra.*

We have readily acknowledged and subscribe to the holding in *Waskelo* to the effect that hardship for variance purposes cannot be premised upon self-created conditions. If, however, hardship exists independently of, and without regard to, the conditions created by the petitioner himself, such hardship will sustain the granting of a variance if the other statutory requirements are met.

The evidence of record alluded to above was sufficient to permit the Board to reach a reasonable inference of hardship within the meaning of the statutory requirement. It was error, therefore, for the reviewing court upon Certiorari to ignore such evidence and to substitute its own inferences and conclusions from the extraneous and unrelated, though premature and unlawful, acts of the Suess.

The grant of the variance here does not, as contended by appellees, tend to encourage intentional and unlawful premature construction activity upon real estate without first obtaining a zoning variance. The owner who embarks upon extensive remodeling or alteration of the premises runs the extreme and very real risk of losing his investment if he is unable to prove each and all of the five statutory requirements for variance. Whether he has commenced remodeling

construction of other alteration has no bearing upon his statutory burden of proof. The condition of the land is examined without reference to such alterations as may have been prematurely and unlawfully made. If petitioner can satisfy the five statutory requirements, the variance petition is properly granted. If he cannot do so the variance should be denied.

In keeping with the foregoing, we cannot say, nor could the reviewing court below, that as a matter of law there was not substantial evidence that application of the zoning ordinance to the property in question would constitute an unusual and unnecessary hardship.

## ZONING BOARD'S VARIANCE GRANT DID NOT RELIEVE REAL ESTATE FROM PRIVATE RESTRICTIVE COVENANTS

It is quite well established, in Indiana as elsewhere, that zoning ordinances and laws cannot relieve real estate from valid private restrictive covenants. *Capp* v. *Lindenberg* (1961), 242 Ind. 423, 178 N. E. 2d 736. We are not unmindful of an interpretation which has been placed on the *Capp* case to the effect that a zoning board cannot *issue* a variance which appears to be contrary to private restrictive covenants. See 2 *Yokley, Zoning Law and Practice* (3rd Ed.), § 20-5, p. 460. To be sure, there is language in the *Capp* opinion which might prompt such an interpretation. That language, however, must be placed in perspective in the light of the explanatory comment which immediately follows it, and in the light of the otherwise virtually unanimous authority herein set forth. The particular passage from *Capp* is:

"* * * the purported variance was prohibited by law, independent of the ordinance.

The general rule upon this proposition has been stated as follows:

> '[A] Zoning law cannot constitutionally relieve land within the district covered by it from lawful restrictions affecting its use, imposed by covenants. 58 Am. Jur., § 4, p. 942.'
>
> 'Zoning regulations and private restrictions do not affect each other.' *Bassett, Zoning* (1940), p. 185 and n. 3." 242 Ind. 423, 433.

Thus it is seen that the choice of language in *Capp,* to the effect that the variance was prohibited, was unfortunate and not literally appropriate to the holding in the light of its supporting authority.

The *Capp* case, therefore, stands only for the principle that a variance is invalid in the sense that its implementation cannot be in violation of valid and reasonable plat or deed restrictions. It does not stand for the principle that such restrictions are proper considerations concerning the issuance of a variance.

In this connection it should also be pointed out that the *Capp* case did not concern an appeal from a zoning proceedings, but was, rather, an action to enjoin building construction.

The most recent case found which involved a direct attack upon a zoning variance by way of private restrictive covenants of record is *Whiting* v. *Seavey* (1963), 159 Me. 61, 188 A. 2d 276. It is virtually identical on its facts with the matter herein presented.

The stipulated issue in the *Whiting* case was as followws:

> "Whether the action of the Board of Appeals in granting an exception to John B. Cochran to operate a boat yard at Hulls Cove in the Town of Bar Harbor is invalid on the sole ground that the restrictive covenants in the deeds under which the Plaintiffs hold title prohibit commercial operations in the area where the boat yard is located unless such restrictions have been removed under the express provisions contained in said deeds or unless such restric-

tions have been rendered void by operation of law." 188 A. 2d 277.

There as here, the property in question was restricted in use to residential purposes by deed covenants and the area was zoned for residential purposes only. There as here, the property owner unlawfully utilized the premises for commercial business purposes, i.e., building, repairing and storing boats, notwithstanding the zoning classification and the restrictive covenants for approximately 3 years and until ordered to cease by order of the appropriate municipal authority. The owner thereafter petitioned for a variance which was denied. He subsequently reapplied for variance, which variance was granted. The Court held as follows:

> "When the conditions or terms of a zoning law are repugnant to those contained in the restrictive covenants in a deed of title the remedy for a breach is not through the prescribed procedure of the zoning law but rather by an action based on a breach of covenant.
>
> In the case at bar the appellants do not contend that the Board of Appeals abused its discretion or was in error factually but only that its decision was invalid because of the existence of the restrictive covenants. The Board of Appeals had the legal right to grant the exception." 188 A. 2d 280-81.

Similarly, *In Re Michener's Appeal* (1955), 382 Pa. 401, 115 A. 2d 367, the Supreme Court of Pennsylvania in consideration of an appeal from a variance denial stated:

> "Zoning laws are enacted under the police power in the interest of public health, safety and welfare; they have no concern whatever with building or use restrictions contained in instruments of title and which are created merely by private contracts. If these applicants were to succeed in obtaining a variance relieving them from the restrictions of the zoning ordinance they would still be subject to the restrictions contained in their deeds, but the enforcement of those restrictions could be sought only in proceedings in equity in which the grantors, their representatives,

heirs and assigns, would be the moving parties. 115 A. 2d 369.

The court in the *Michener* case continued:

"The fact that there were building restrictions in the deeds was wholly irrelevant in the appeal before the court on the question whether a variance should have been granted by the Board under the zoning ordinance. The private parties who alone possessed the right to enforce those restrictions were not before the court. It might be that they would never seek such enforcement, or that for some reason they had waived or lost their right so to do, or that, because of neighborhood changes or because the restriction had ceased to be of advantage to the covenantees, the restriction would no longer have been enforceable. Accordingly, it has been uniformly held that any consideration of building restrictions placed upon the property by private contract has no place in proceedings under the zoning laws for a building permit or a variance." 115 A. 2d 370.

See also *Lorland Civic Assn.* v. *DiMatteo* (1968), 10 Mich. App. 129, 157 N. W. 2d 1.

The logic of this conclusion is demonstrated by the principle of law which, in proceedings to determine the enforceability of restrictive covenants, permits evidence of a zoning law change to show that the character of the neighborhood has changed so as to render the restrictive covenant no longer logically, practically, or equitably enforceable. See *Bachman* v. *Colpaert Realty Corp.* (1935), 101 Ind. App. 306 at 319-320, 194 N. E. 783.

These foreign case decisions are in keeping with the views of recognized text writers in the field of Zoning Law. In 2 *Yokley, Zoning Law and Practice,* § 20-5, p. 461, the writer notes:

"In the realm of zoning administration, consideration will not be given to the enforcement of restrictive covenants merely to protect the rights of private property owners.

Restrictive covenants, such as those that run with the land, are only enforceable by the parties thereto, or their assigns, and only such parties may claim the benefits of the covenant."

and a more extensive treatment of the subject which appears in 3 *Rathkopf, The Law of Zoning and Planning,* § 74-1 *et seq.* is widely quoted as follows:

"The zoning ordinance constitutes the regulation of land use through the exercise of the police power in accordance with a comprehensive plan for the entire community. It is entirely divorced in concept, creation, enforcement and administration from restrictions arising out of agreement between private parties who may, in the exercise of their constitutional right of freedom of contract, impose whatever restrictions upon the use of their lands that they desire, such covenants being enforceable only by those in whose favor they run.

\* \* \*

"The zoning restrictions imposed upon a property owner's land are the measure of his obligations to the community; the private covenant is merely an indication of the measure of his obligation to a private party, which may or may not be enforceable but which cannot, in either event, affect the necessity of conforming to the comprehensive plan set forth in the ordinance.

\* \* \*

"It is the duty of an administrative officer charged with the issuance of permits to administer his duties in accordance with the provisions of the zoning ordinance. Consequently, if an application for a permit shows compliance with the requirements of the zoning ordinance and other applicable ordinances, he may not predicate his denial of the permit upon the existence of more restrictive provisions in a deed or covenant.

Nor is it proper for an administrative body to consider the existence of a private covenant upon an application for a variance or a special exception, the only applicable requirements for these being those set forth in the enabling act of ordinance."

We are, therefore, persuaded to hold that issuance of a variance grant is not invalid merely because utilization of the

644

grant may be in violation of private restrictive covenants. The appropriate remedy of persons deeming themselves aggrieved by violation of a restrictive covenant is the injunctive relief afforded by equity or an action in damages. *See Capp* v. *Lindenberg* and *Bachman* v. *Colpaert Realty Corp., supra.*

For the reasons stated, we hereby reverse the judgment below and remand the cause with instructions to reinstate the decision of the Metropolitan Board of Zoning Appeals.

White, P.J. and Buchanan, J., concur.

NOTE.—Reported in 281 N. E. 2d 536.