GLENN FAIL, EVA NETTIE FAIL, CALVIN JONAS AND SAM CADY
v. LAPORTE COUNTY BOARD OF ZONING APPEALS ET AL.

[No. 3-574A79. Filed October 14, 1976. Rehearing denied December 2, 1976. Transfer denied April 15, 1977.]

*John W. Newby, Edward L. Volk, Newby, Lewis, Kaminski & Jones,* of LaPorte, for appellants.

*Frank J. Lanigan, Donald E. Baugher, Osborn, Lanigan and Osborn,* of LaPorte, for appellee Board of Zoning Appeals, *Arthur L. Roule, Sr., Roule & Raelson,* of LaPorte, for appellees Small and Mansfield.

GARRARD, J.—This appeal challenges a circuit court decision upholding a county zoning board's grant of a variance and special exception which were necessary for the Smalls to be able to operate a sanitary landfill in compliance with a zoning ordinance. We affirm.

The record disclosed that Smalls had contracted to purchase a 288 acre tract from the Estate of Everett Fail, deceased. They petitioned for the variance and special exception

to enable them to utilize 52 acres from the tract as a landfill. Neighboring property owners (hereinafter referred to as "Fail") objected. The zoning board granted the petitions and Fail appealed to the circuit court. The court vacated the decision and remanded the case to the zoning board because the board had failed to enter findings. After a new hearing, the board made findings and again granted the variance and special exception. Fail again sought *certiorari* in the circuit court. The court affirmed the board and this appeal followed. The errors raised by Fail fall into six categories.

## I.  Conflict of Interest

In the proceedings before the zoning board, no challenge was made to participation by any of the members in the decision. Before the circuit court, however, Fail asserted that answers to certain post-hearing interrogatories disclose that board member Blint should have disqualified himself. Error is assigned for the failure of the court to set aside the board's determination upon the basis of Blint's participation.

Fail relies upon IC 1971, 18-7-5-1 which provides:

> "No member of the . . . board of zoning appeals . . . shall participate in the hearing or decision . . . upon any zoning matter . . . in which he is directly or indirectly interested in a financial sense . . . ."

The evidence presented to the trial court disclosed that Blint is the owner and operator of Blint Equipment, Inc., a retail dealership selling automobiles and equipment. Over a five-year period which ended some ten years before these proceedings were initiated, Mr. Small, who was in the landscaping business, had purchased two tillers and a used tractor from the dealership. In addition, after the board had granted the petition the first time and before its decision had been vacated by the court, Small purchased a new small Ford landscaping tractor from Blint Equipment, Inc. All the purchases had been made for cash. There was no evidence that the latter purchase was suitable for use in a landfill

operation or that Blint would sell equipment to Small to operate the landfill.

Fail, citing *Zell* v. *Borough of Roseland* (N.J. 1956), 125 A.2d 890, argues that it is unnecessary to establish that the prohibited interest actually affected the member's vote. While we agree, that conclusion does not answer the question of whether a prohibited conflict of interest has been shown to exist. The existence of such an interest is generally acknowledged to be a question of fact. *See*, 82 Am. Jur. 2d, *Zoning & Planning*, § 65, at 490; Anno.: 10 A.L.R.3d 694. Thus, in reaching its determination upon the facts, the trial court is not limited to ascertaining whether a party has actually exercised improper influence. The court may find a conflict of interest upon a consideration of whether the situation is one reasonably calculated to weaken public confidence and undermine the public's sense of security for the protection of individual rights in the exercise of zoning authority. *Josephson* v. *Planning Board of Stamford* (1964), 151 Conn. 489, 199 A.2d 690, 10 A.L.R.3d 687.

Yet in appealing from an adverse determination, Fail is appealing from a negative judgment on this issue. From the facts as recited, we cannot say there was but one conclusion a reasonable mind would reach, and that it was contrary to that reached by the trial court. We therefore find no error in the court's determination that board member Blint was not disqualified from participating in the decision.

## II. Unsigned Findings

It is argued that the board's decision should have been set aside because the findings made by the board and upon which its decision was based were not separately signed by the board members. As authority Fail cites a line of cases requiring a trial court to separately sign special findings of fact. These decisions appear to emanate from *Peoria Marine and Fire Ins. Co.* v. *Walser* (1864), 22 Ind. 73,

where the court held that the findings entered by the court could not constitute a basis for appellate review unless they were signed by the judge *or* were incorporated into the bill of exceptions signed by the judge.

Whether these precedents are viable under our present rules of civil procedure is doubtful, but need not now be decided. Proceedings before zoning boards are not governed by the rules of strictness that apply in judicial proceedings. *Devon Civic League* v. *Marion Co. Bd. Zoning Appeals* (1967), 140 Ind. App. 519, 224 N.E.2d 66. The record of the proceedings before the board discloses that each finding entered by the board was separately moved, seconded and unanimously adopted. If the findings should have been signed, under these circumstances the error was harmless. *Metropolitan Bd. of Zoning Appeals* v. *Froe Corp.* (1965), 137 Ind. App. 403, 209 N.E.2d 36, relied on by Fail, is inapposite. In that case only four members were present and only two voted in favor of the action taken. The illegality which required reversal was the lack of a majority vote which was not cured by an attempt to add votes after the board lost jurisdiction of the proceeding.

## III. Evidence to Support Findings

The board found that granting the variance would not materially increase congestion in the streets. It also found that the proposed use would not materially change the character of the district or lower the market value of adjacent property. Fail claims the evidence was insufficient to sustain these findings.

Our function, and that of the trial court, is limited to ascertaining whether there was any substantial evidence of probative value to support the findings. *Bd. of Zoning Appeals* v. *School City of Mishawaka* (1957), 127 Ind. App. 683, 145 N.E.2d 302. While the evidence was in conflict, we cannot say that error was committed.

Although it appeared that traffic would increase, there was evidence regarding improvements to be made to the roads, including suitable sleeper and turn-off lanes. The board could have concluded that the increase in traffic would be sufficiently offset by the proposed improvements so that congestion would not materially increase.

On the question of the character of the area and market values, the evidence was in direct conflict. Mr. Small's engineer and two real estate appraisers testified there would be no adverse effect. The engineer presented a detailed study considering precautions to be taken to insure proper operation and location of the landfill. We may not now reweigh the evidence to reach a conclusion different from that of the board.

## IV. Standing

At the time of the hearing before the zoning board, Smalls' interest in the real estate was that of contract purchasers. The contract was not offered in evidence to the board. However, the Smalls' representations in this regard were not challenged by Fail.[1] Instead, Fail argued to the zoning board that while an ordinary contract purchaser had standing to seek relief from the board, the Smalls did not because there had been no order entered in the proceedings in the Estate of Everett Fail, deceased, approving the contract or sale.

In the subsequent *certiorari* proceeding before the circuit court, both the contract and administrator's deed were permitted in evidence. In addition, by stipulation, the court took judicial notice of the record in the estate. Fail asserts this

1. At the second hearing a recording of the evidence produced at the first hearing was admitted. It is suggested therein that at least one of the Smalls' applications was joined in by the administrator of the estate. However, from the transcript before us, we are unable to determine whether the administrator actually joined or whether the petitions recited his joinder but his signature was not secured. Appellees' argument makes no issue of this, and our decision assumes *arguendo* that the administrator did not join in one or more of the petitions before the board.

amounted to a trial *de novo,* which is prohibited by IC 1971, 18-7-5-92.

It is true that an applicant for a variance must have "standing." He must have a sufficient interest in the subject matter of the application that he will actually be injured by the governmental action or prospective action to enforce the zoning ordinance. *See, Bowen* v. *Metropolitan Bd. of Zoning Appeals* (1974), 161 Ind. App. 522, 317 N.E.2d 193.

Smalls' interest was that of a contract purchaser of the real estate. While the sale required proper approval by the probate court, this did not render the contract a nullity. We hold that Smalls had sufficient standing to seek a variance.

Since their standing as contract purchasers was sufficient to enable them to seek a variance, and since the fact that they were contract purchasers was undisputed (except as to the necessity of court approval), the trial court properly admitted evidence establishing the court approval and perfection of the sale. The statute IC 1971, 18-7-5-92, while prohibiting a trial *de novo,* permits the trial court on a petition for *certiorari* to take additional evidence to supplement the evidence and facts disclosed by the return where such evidence is necessary for the proper disposition of the case. Evidence that the sale to Smalls had been properly consummated was a proper supplement to enable the court to correctly decide the appeal. *See, Metropolitan Bd. of Zoning Appeals* v. *Gateway Corp.* (1971), 256 Ind. 326, 268 N.E.2d 736.

## V. *Hardship*

Fail next contends the evidence was insufficient to support the findings that a hardship would exist if the variance was not granted. Fail also contends that even if a hardship

existed, it did not apply to Smalls, who purchased the property with knowledge of the zoning requirements.

Whether an unnecessary hardship exists is a question of fact to be determined by the board. The primary question is whether the land in question may reasonably be put to a conforming use. *City of East Chicago* v. *Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N.E.2d 459. Here the land was zoned for agricultural use. The board found that the 52 acres proposed to be used for the landfill was not suitable for farming due to its rolling, brush-covered character and poor soil quality. The evidence sustained such a finding.[2]

Even so, it is claimed that no hardship existed as to Smalls since they agreed to purchase the land with knowledge of the zoning requirements. As stated in *Bd. of Zoning Appeals* v. *Waskelo* (1960), 240 Ind. 594, 168 N.E.2d 72, a petitioner cannot claim unnecessary hardship from a condition which he created.

The doctrine of *Waskelo* does not apply. Subsequent decisions have made it clear that where an unnecessary hardship is shown to exist upon the basis of the terms of the ordinance as they apply to the land, the ability to claim the hardship is available to a purchaser as well as the original owner. *Bowman* v. *Metropolitan Bd. of Zoning Appeals* (1975), 165 Ind. App. 212, 331 N.E.2d 739, *reh. den.* 336 N.E.2d 708; *Suess* v. *Vogelgesang* (1972), 151 Ind. App. 631, 281 N.E.2d 536.

---

2. *City of East Chicago* v. *Sinclair Refining Co., supra*, imposes two other requirements to a determination of unnecessary hardship. One is that the condition be unique to the owner rather than one that is general to the neighborhood and might therefore indicate unreasonableness of the zoning ordinance itself. Here the balance of the land concededly was farmable. The other requirement is that the use requested in the variance not alter the essential character of the locality. This we have considered *supra* under III.

## VI. Spot Zoning

Fail's final argument urges that the court erred in failing to make a finding upon the "issue" of spot zoning, and that a reversal is necessary because the evidence demonstrates spot zoning.

Under the zoning ordinance, landfills can be operated only upon land zoned for agricultural use. Fail argues that the land in the area had all been zoned for residential use until the 288 acre tract was rezoned for agricultural use. He contends the 288 acres was "singled out for different treatment than the surrounding area" and that this constituted spot zoning. *See, e.g., Penn* v. *Metropolitan Plan Comm.* (1967), 141 Ind. App. 387, 228 N.E.2d 25.

We find that Fail has presented no reviewable issue. The question concerns the amendment of the zoning ordinance which occurred prior to these proceedings. Even if Fail had challenged the rezoning as spot zoning in his petition for certiorari, which he did not, the alleged illegality of the zoning amendment was not subject to attack in this fashion. *Bryant* v. *Lake County Trust Co.* (1972), 152 Ind. App. 628, 284 N.E.2d 537; *First Church of the Nazarene* v. *Weaver* (1972), 154 Ind. App. 157, 289 N.E.2d 155; *cf. City Plan Comm.* v. *Pielet* (1975), 167 Ind. App. 324, 338 N.E.2d 648. As to failure to assign an error in the petition for certiorari constituting a waiver, *see, Kessler-Allisonville C.L.* v. *Marion Co. Bd. of Z.A.* (1965), 137 Ind. App. 610, 209 N.E.2d 43.

The judgment is affirmed.

Hoffman, J., concurs; Lowdermilk, J., sitting by designation, concurs.

NOTE.—Reported at 355 N.E.2d 455.