Charles STOKES, et al.,
Plaintiffs-Appellants,

v.

CITY OF MISHAWAKA, Indiana,

and

Moyer-Turk Associates, an Indiana Partnership, Defendants-Appellees.

No. 3–481A106.

Court of Appeals of Indiana, Third District.

Oct. 21, 1982.

Rehearing Denied Jan. 13, 1983.

Don G. Blackmond, South Bend, for plaintiffs-appellants.

John D. Bodine, George V. Filippello, Mishawaka, for defendants-appellees.

GARRARD, Judge.

The appellants are homeowners residing outside the city limits of Mishawaka. They sought a declaratory judgment to the effect that an ordinance zoning a tract of land for commercial development was invalid. After a hearing the trial court ruled that appellants ("homeowners") did not have standing to maintain their action and should take nothing by way of their complaint. From a denial of their motion to correct errors homeowners now appeal.

The homeowners reside in a wooded area adjacent to the city limits of Mishawaka. The land lying within the city contiguous to

this residential area was an open field of approximately 12 acres, with commercial development in the corner farthest from landowners. The tract had been incorporated into the city in 1975 but the property was not zoned by any specific ordinance of the city. In a comprehensive plan adopted by the city in 1976 the tract had been designated as "residential reserve."

The partnership of Moyer-Turk owned the tract and for several years had sought a commercial zoning classification. In August of 1978 Moyer-Turk petitioned the common council to zone the tract for planned unit development. The petition was denied. In January of 1979 Moyer-Turk petitioned for a zoning classification of C–2, which would have permitted commercial development. The zoning petition failed to pass in the council, the vote being 4 against and 4 in favor. On October 1, 1979 Moyer-Turk petitioned again to have the tract zoned for planned unit development. The petition was passed by the council, 5 votes for and 4 against. In each of these instances the city's plan commission had recommended approval of the requested zoning.

Throughout these proceedings Jean Bodine Powell was a member of the common council. In August of 1978 she voted against the petition. Moyer-Turk was then represented by Mr. Laughlin. In January of 1979 Moyer-Turk was represented by John Bodine, who is the son of Mrs. Powell. Apparently because her son was representing petitioners, Mrs. Powell refrained from voting. The petition for zoning failed to pass because the vote was tied, 4 council members for and 4 against. In October of 1979 Mrs. Powell did vote in favor of the petition for planned unit development zoning and the petition passed. Mr. Bodine also represented Moyer-Turk in that proceeding before the common council.

The homeowners then sought declaratory relief under IC 34–4–10–2. They asserted the ordinance zoning the property for planned unit development was invalid, having been adopted "under a circumstance demonstrating a conflict of interest," being "violative of the doctrine of 'appearance of fairness . . . ,'" and contrary to principles of res judicata. A hearing was held on September 8, 1980 and on September 30, 1980 the trial court entered judgment as follows:

"The Court having had this matter under advisement, being duly advised, and having read the brief of plaintiff now enters judgment.

The issue of standing is an interesting one. People outside the city limits who pay no taxes or other support to the City, wish to control the decision of the City, under the banner of 'protection of one's own property.' The Revolutionary War was fought upon the proposition of taxation without representation. Our case is the reverse of that.

The Court finds that plaintiffs have no standing to bring this lawsuit.

Realizing this case may be appealed and in an effort to put all issues in one appeal and not compound lawsuits, the Court will decide the additional issues of this cause.

Res Judicata is a valid doctrine. In August, 1978, a request for zoning was filed to have this real estate zoned P. U. D. and was defeated. On January 15, 1979, a request to have the property zoned C–2 Commercial was filed and defeated. The present request for P. U. D. zoning was filed October 1, 1979.

If one is not allowed to file a petition for a different zoning within one year, then in that event the second petition would be the one which would be barred by res judicata. More than one year has passed since P. U. D. petition was filed.

Note: All parties refer to this as a rezoning; however, the land was never zoned after it was annexed by the City of Mishawaka.

Extending the Doctrine of 'Appearance of Fairness' to its extremity would hamstring a common council until it could not perform its work. A banker in a small town does business with 80 to 90% of the business therein and with a large percent of the residents. The logic would be to say that a banker could not serve as a council member.

"There is no evidence that any improper influence was used or considerations were made in this decision, and we are left with true 'appearance of fairness'—this being the attorney for petitioner was the son of a council member.

Under all the circumstances the court does not find a reversal justified.

Although the correctness of the Council's decision is not an issue, it is nevertheless interesting to note that several commercial buildings are already on the real estate in question and that said real estate is just across the street from one of the largest shopping centers in northern Indiana.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that plaintiffs have no standing to bring this cause.

It is Further Ordered, Adjudged and Decreed that on all other issues plaintiffs take nothing by way of their complaint.

Costs v. plaintiffs.

Dated this 30th day of September, 1980."

In summary, the trial court found the appellants did not have standing to seek declaratory relief. The court also determined that even given standing, the appellants' claims did not entitle them to relief. The court stated the zoning action was not contrary to principles of res judicata or any "doctrine of appearance of fairness."

■■ The appellants raise the following issues:[1]

1. The trial court's finding and decision that the landowners have no standing to bring suit to challenge the Ordinance # 2321, enacted by the City of Mishawaka is contrary to law and an abuse of discretion.

2. The trial court's finding and decision that the landowners cannot prevail upon the theory of Res Judicata or upon the theory of the doctrine of "Appearance of Fairness" is contrary to law.

3. The trial court, having resolved the issue of standing against the landowners, erroneously decided the issues relating to the doctrine known as Res Judicata and the doctrine of "Appearance of Fairness" as being contrary to law and superfluous as *obiter dicta*.

ISSUE 1:

■■■ The trial court held the homeowners did not have standing to seek declaratory relief.

IC 34–4–10–2 provides:

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question or construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations hereunder." [Acts 1927, ch. 81, § 2, p. 208.]"

Homeowners challenge the validity of the zoning ordinance. A declaratory judgment action is the proper method whereby such a result may be obtained. *Town of St. John v. Home Builders Association of Northern Indiana, Inc.* (1981), Ind.App., 428 N.E.2d 1299, 1303. The issue is whether homeowners are "persons . . . whose rights, status or other legal relations are affected by . . . municipal ordinances."

The homeowners contend their rights as property owners were affected because the zoning and potential for commercial development had an adverse impact upon their property values. However, the trial court in its order stated summarily that the homeowners did not have standing. The court did not make specific findings in support of its determination. Thus we are faced with a general finding that the homeowners did not have standing to seek declaratory relief.

---

1. The city urges the appeal was not properly perfected. Although the praecipe was filed before the motion to correct errors was ruled on, that irregularity is not critical. *Haverstick v. Banat* (1975), 165 Ind.App. 275, 331 N.E.2d 791.

Pursuant to *P–M Gas & Wash Co., Inc. v. Smith* (1978), 268 Ind. 297, 375 N.E.2d 592 a second motion to correct errors was not necessary after the court amended its judgment.

No Indiana case directly addresses the present issue of whether non-residents of a city owning property contiguous to but outside the city limits have standing to challenge a zoning ordinance of the city which may affect the value of their property.

In *Zoercher v. Agler* (1930), 202 Ind. 214, 221, 172 N.E. 186, our Supreme Court determined that under the Uniform Declaratory Judgments Acts:

"[T]he person bringing the action must have a substantial present interest in the relief sought, such as there must exist not merely a theoretical question or controversy but a real or actual controversy, or at least the ripening seeds of such a controversy, and that a question has arisen affecting such right which ought to be decided in order to safeguard such right."

Pursuant to the criteria delineated in *Zoercher,* we have recognized that under limited circumstances taxpayers who do not reside within an annexed area have standing to seek declaratory relief to challenge the annexation by their city even though under IC 18–5–10–24 only residents of the annexed area who meet specific requirements had statutory standing to remonstrate against the annexation. *Pitts v. Mills* (1975), 165 Ind.App. 646, 333 N.E.2d 897; and *Montagana et al. v. City of Elkhart* (1971), 149 Ind.App. 283, 271 N.E.2d 475. Also, our decision in *Stout v. Mercer* (1974), 160 Ind.App. 454, 312 N.E.2d 515 is relevant. The appellees therein petitioned for review by certiorari of the granting of a variance by the board of zoning appeals. The appellees had not appeared and objected at the hearing held on the matter. The trial court, upon appellees' petition, reversed the board's decision granting the variance. On appeal the appellants argued that the appellees were not entitled to trial court review because they had not appeared at the board's hearing. In holding that appellees were entitled to review, we stated:

"It cannot be doubted that adjoining or surrounding landowners may be directly affected by the grant of a variance to a particular applicant. The use to which a tract of land is put may have a direct effect upon the value of surrounding properties. Adjoining or surrounding landowners may therefore be persons 'aggrieved' within the meaning of Burns § 53–783 as that section is construed in *City of Hammond* [ (1972) 152 Ind.App. 480, 284 N.E.2d 119]; *supra.* Further, under the construction given in that case, the particular landowner would be 'aggrieved' regardless of whether he appeared and became a party to the hearing before the board of zoning appeals. His legal interests would be no less affected due to a failure to appear and object." 312 N.E.2d at 520.

If an adjoining landowner has standing to seek review of a variance because of its impact upon surrounding property values, we are reluctant to hold, as the trial court did, that an adjoining property owner does not have standing to challenge an ordinance because his property lies outside the city limits, however close he may reside to the boundary and no matter how adversely his rights may be affected by the city's actions.

Other jurisdictions have not prefaced a landowner's standing to seek declaratory relief against a municipality upon whether the owner resides within the municipality's boundaries.

In *Allen v. Coffel* (Mo.App.1972), 488 S.W.2d 671 the court carefully analyzed the problem and law in various jurisdictions and in a well reasoned decision concluded that such adjoining landowners had standing to sue for declaratory judgment albeit their non-residence in the city. Among other things the court observed that:

"Zoning ordinances constitute an exercise of the police power. A municipality has no inherent police power which is rather, an attribute of state sovereignty. The power to zone has been delegated to municipalities by the [legislature] and for valid exercise must conform to the terms of that statutory grant. The delegation of the zoning power to a municipality is for the express purpose of promoting the 'health, safety, morals or the general welfare of the community.' A zoning ordi-

nance is in derogation of the right of private property and cannot be imposed if it does not bear a substantial relationship to those legislatively declared desiderata for the public good. A zoning ordinance must rest upon some rational basis of classification and apply alike to all persons and things falling within a designated class. Once enacted, those purchasing property affected by such zoning have the right to rely that it will not be changed unless required for the public good." [citations omitted]

488 S.W.2d 678, 79. We approve of the court's reasoning in *Allen.*

In line with our cases on standing for declaratory relief, and under the reasoning of *Allen, supra,* we determine that appellants as owners of property adjacent to the zoned tract had standing to seek declaratory relief.

The homeowners next make two substantive challenges to the common council's passage of the zoning ordinance on October 1, 1979. They argue that: (1) the council was precluded from zoning the property under the doctrine of res judicata, and (2) a conflict of interest existed because petitioner Moyer-Turk was represented by the son of a council member, Jean Bodine Powell, and that a relationship violates an "appearance of fairness" doctrine.

■ As related above, the October 1, 1979 vote on the zoning petition was the third time since August of 1978 that Moyer-Turk had sought zoning on its property. Homeowners contend that in the absence of changed circumstances, the common council was bound by its earlier decisions not to zone the property for C–2 commercial or planned unit development. They assert that under the doctrine of res judicata a prior adverse determination on a zoning request is binding in the absence of a material change in circumstances. In support of this assertion they cite *Easley et al. v. Met-* *ropolitan Board of Zoning Appeals of Marion Co.* (1974), 161 Ind.App. 501, 317 N.E.2d 185; *Dellinger et al. v. Hagest et al.* (1973), 157 Ind.App. 158, 299 N.E.2d 222; and *Braughton et al. v. Metropolitan Board of Zoning Appeals of Marion Co.* (1970), 146 Ind.App. 652, 257 N.E.2d 839.

However, these cases arise out of actions by either boards of zoning appeals or plan commissions. As we noted in *Carpenter v. Whitley Cty. Plan Comm.* (1977), 174 Ind. App. 412, 367 N.E.2d 1156, 1158, the application of the doctrine of res judicata "arises from the *quasi-judicial* function served by boards of zoning appeals and plan commissions." However, in the present case the Common Council of the City of Mishawaka functioned as a *legislative* body when it zoned the property. *Hills v. Area Plan Comm. of Vermillion County* (1981), Ind. App., 416 N.E.2d 456, 461. As a legislative body the council is not bound by the judicial precepts of res judicata.[2]

Homeowners next argue that a council member should be precluded from participating or voting on a zoning petition where the petitioners are represented by the council member's son. They urge a council member's participation and vote under these circumstances violates the doctrine of "appearance of fairness."

■ On two occasions petitioners Moyer-Turk were represented by councilperson Powell's son, John Bodine. In January of 1979 Mrs. Powell refrained from voting on whether the property should be zoned C–2 commercial. However, in October of 1979 she voted for the petitioners' request to have the property classified for planned unit development. Homeowners thus contend that Mrs. Powell's participation voided the council's action on Moyer-Turk's petition. *Fail v. LaPorte Cty. Board of Zoning Appeals* (1976), 171 Ind.App. 192, 355 N.E.2d 455; and *Kremer v. City of Plain-*

2. IC 36–7–4–609 (formerly IC 18–7–4–609 and its predecessor IC 18–7–5–67) do statutorily impose a one year proscription upon municipalities from reconsidering a failed zoning amendment. However, this statute is only triggered where the plan commission has reported adversely on the proposed amendment and the city has then failed to adopt the ordinance despite the commission's disapproval. The statute has no application to the facts before us since in each instance the plan commission had recommended adoption.

*field* (1968), 101 N.J.Super. 346, 244 A.2d 335 are cited by homeowners. These cases are concerned with members of plan commissions or boards of zoning appeals who had potential conflicts of interest while acting in a quasi-judicial capacity.[3] We think their application must be distinguished from the present situation. The common council was acting in its legislative capacity and as such is responsible to the electorate. *Hills v. Area Plan Comm. of Vermillion County* (1981), Ind.App., 416 N.E.2d 456, 461. Our review is limited. "It is well settled that the courts cannot inquire into the motives of members of a local legislative body when acting in a legislative capacity." *Town of Schererville v. Vavrus* (1979), Ind.App., 389 N.E.2d 346, 351 (citing *Gardiner v. City of Bluffton* (1909), 173 Ind. 454, 89 N.E. 853; *Schmidt v. City of Indianapolis* (1907), 168 Ind. 631, 80 N.E. 632; *Lilly et al. v. The City of Indianapolis* (1898), 149 Ind. 648, 49 N.E. 887.)

██ When a governing authority acts on rezoning applications, it exercises a legislative power. *Town of Schererville, supra.* The Moyer-Turk tract had not previously been zoned. Moyer-Turk's petition required the common council to consider a zoning classification for the property. This was clearly a legislative function of the council.

██ Mrs. Powell's vote was one of five voting to approve the application for zoning already bearing the recommendation of the plan commission. Other members of the council were persuaded that the facts warranted a zoning of the property to a planned unit development classification. Viewing the proceedings in their entirety, we do not find that Mrs. Powell's participation was precluded.

We conclude that the trial court determined there were alternative grounds for the decision. We reverse its determination that the appellants lacked standing to sue. We affirm the judgment for the city on the merits.

Reversed in part, affirmed in part.

HOFFMAN, P. J., and STATON, J., concur.

**3.** It should be noted that in *Fail, supra,* an express statutory prohibition was involved.