**Allen F. REINKING and Ola Ruth Reinking, Appellants–Petitioners,**

v.

**METROPOLITAN BOARD OF ZONING APPEALS OF MARION COUNTY, Indiana, Division II, et al., Appellees–Respondents.**

No. 49A04–9512–CV–462.

Court of Appeals of Indiana.

Sept. 13, 1996.

Rehearing Denied Nov. 7, 1996.

Gregory P. Schmith, Indianapolis, for Appellants.

Stephen Neff, Indianapolis, for Appellees.

**OPINION**

CHEZEM, Judge.

*Case Summary*

Petitioners–Appellants, Allen and Ola Reinking (collectively, "the Reinkings"), appeal the trial court's order which upheld the decision of the Metropolitan Board of Zoning Appeals ("MBZA" or "the Board"), to deny their Petition for Variance. We affirm.

*Issues*

The Reinkings present two issues for our review, which we restate as follows:

I. Whether a subsequent purchaser of property may successfully raise the prior owner's issue of taking without just compensation in violation of Sec.21, Article I of the Indiana Constitution and the due process clause of the Fourteenth Amendment of the United States Constitution;

II. Whether knowledge of a restrictive zoning ordinance prior to the acquisition of property waives the right to argue undue hardship; and,

III. Whether the Reinkings' variance petition satisfied the statutory requirements of I.C. 36–7–4–918.5.

*Facts and Procedural History*

Lot 244 was originally platted in 1956 with approximately 15,000 square feet of land. After the State of Indiana took the northern portion of the lot for construction of interstate 465, the lot had a remaining square footage of approximately 8,500 feet. The dwelling district ordinance in question was adopted in 1989, after the construction of I–465. Uncontested testimony in the record supports the fact that the Reinkings purchased lot 244 after 1989. After purchasing the property from a tax sale buyer, the Reinkings petitioned the MBZA for a variance of developmental standards. Their petition was denied. Subsequently, the Reinkings filed a Verified Petition for Writ of Certiorari. The trial court set forth the following findings of fact and conclusions of law:

*Order*

This matter having come before the Court on Petitioners' Verified Petition for Writ of Certiorari, and the Court being duly advised in the premises, now finds as follows:

1. The Petitioners, Allen F. Reinking and Ola Reinking, are the owners of the real estate commonly known as 2358 Redfern Drive Indianapolis, Indiana.

2. The real estate is a corner, platted lot in Rosedale Hills Subdivision, legally described as Lot 244 in Rosedale Hills Subdivision, and the lot is located at the intersection of South Keystone Avenue and Redfern Drive in Indianapolis, Indiana.

3. The real estate is classified under the pertinent Zoning Ordinance as D–2 Residential. Lot 244 is comprised of dimensions as follows: 100 feet of street frontage along Redfern Drive, which is the South side of the lot; 95 feet of street frontage along Keystone Avenue, which is the East side of the lot; 102 feet along the North line; and 75 feet along the West line.

4. The Zoning Ordinance requires a 25 foot minimum setback line from Redfern Drive and a 55 foot setback from Keystone Avenue.

5. The Petitioners filed a Petition for Variance before the Board of Zoning Appeals requesting a variance from the 25 foot Redfern Drive setback to 20 feet and from the 55 foot Keystone Avenue setback to 35 feet. Petitioners also requested modification of the D–2 minimum lot area requirement.

6. The Department of Metropolitan Development reviewed the Petition for Variance, inspected the property and issued its staff report recommending approval of the Petition.

7. On March 21, 1995, the Board heard the Petition and voted 3–0 to deny the variance. On June 20, 1995, the Board adopted the following Negative Findings of Fact as required by law:

 1. The grant will be injurious to the public health, safety, morals and gen-

**140**

eral welfare of the community because the proximity of the residence to the street would interfere with the motorist[s'] and pedestrian[s'] visibility and increase the probability of an Accident.

2. The use or value of the area adjacent to the property included in the variance will be affected in a substantially adverse manner because the proposed residence would not be of a similar setback nor a similar building and lot area as the long-time established residences in the area.

8. There was sufficient evidence to support the Board's denial of the Petition for Variance.

9. The Decision of the Board of Zoning Appeals is affirmed.

*Discussion and Decision*

*I. Standing*

■ The trial court entered specific findings of fact and conclusions of law *sua sponte*. When reviewing such findings, we employ a two-tiered standard of review. *Edward D. Jones & Co. v. Cole*, 643 N.E.2d 402, 405 (Ind.Ct.App.1994). First, we determine whether the findings support the judgment; then, we determine whether the conclusions of law and the judgment are clearly erroneous based upon the findings of the court. *Id.* When a trial court enters such findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not entered findings. *In re Marriage of Snemis*, 575 N.E.2d 650, 652 (Ind.Ct.App.1991). We may affirm a general judgment on any theory supported by the evidence. *Id.* We must determine whether the conclusions of law and judgment are clearly erroneous in light of the findings. *American Cyanamid Co. v. Stephen*, 623 N.E.2d 1065, 1070 (Ind.Ct.App.1993).

■ No Indiana case has directly addressed the present issue of whether a subsequent purchaser of property may successfully challenge the constitutionality of a zoning ordinance that adversely affects the value of property when the ordinance was adopted prior to their purchase. The Reinkings contend that the zoning ordinance as applied results in a unconstitutional taking of property without just compensation. We disagree. An applicant for a variance must have standing. *Fail v. LaPorte County Board of Zoning Appeals*, 171 Ind.App. 192, 355 N.E.2d 455, 459 (1976). We have long determined that Ind. Rules of Procedure, Trial Rule 17(a),[1] governing standing, is applicable to administrative hearings, including zoning board of appeals proceedings. *Bowen v. Metropolitan Board of Zoning Appeals in Marion County*, 161 Ind.App. 522, 317 N.E.2d 193, 197 (1974). The purpose of standing, or real party in interest, requirement is to prevent the filing of meritless and frivolous suits. *Harbeson v. Town of Lanesville*, 486 N.E.2d 1065, 1068 (Ind.Ct.App.1985). Indiana Code 34-4-10-2 provides:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

The Reinkings, in order to have standing, must show that they are the real party in interest with a substantial, direct, or immediate interest in the outcome of the suit.

Since Indiana has not previously considered this particular issue, we look to similar cases and other jurisdictions which have spoken on the subject. There is general accord that an applicant requesting a variance must show an ownership interest. *See* Anno., 89 A.L.R.2d 664. In *Bowen*, a lessor of land appealed the trial court's decision upholding the Board of Zoning Appeals' grant of variance to the lessee. *Bowen*, 317 N.E.2d 193.

**1.** Ind., Trial Rule 17(A) reads: "(A) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest."

We determined that the lessee did not have standing to request a variance because its interest did not qualify as a real party in interest. *Id.,* 317 N.E.2d at 197–199. Although we determined in *Bowen* that the lessee did not have standing, the *Bowen* lessee was closer to being a party at interest than the Reinkings because the lease and questions as to the ordinance restrictions arose during the lessee's use of the property. We determined that the lessee did not have standing in *Bowen* because the lessor of the land had not relinquished all rights to the property. Assuming *arguendo,* that we had determined that the lessor had abjured all rights to the ownership of the property, the lessee would have then been deemed the owner in interest because the restrictive ordinance was enacted during the lessee's ownership of the property.

 In *Fail,* we determined that a contract purchaser of real estate had sufficient standing to request a variance for the operation of a sanitary landfill, notwithstanding that the sale of the tax property required prior approval. *Fail,* 355 N.E.2d at 459. The rationale prevalent in contract purchaser and lessee cases is that the contract or lease has the effect of making the agent an owner in fee. Likewise, a petitioner before a MBZA must prove he is the real party in interest in order to have standing to raise constitutional issues. The Reinkings' case is distinguished. The record does not show when the Reinkings actually purchased the lot, but does indicate that the Reinkings purchased the property after the ordinance was enacted. The Reinkings lack standing because the taking occurred before they acquired the property. That is, the Reinkings were not the owners of the lot when the taking occurred. We are not determining that subsequent owners of tax sale property are not entitled to raise constitutional issues that arise during their proprietorship. We have determined only that subsequent owners of tax sale property are required to be the real party in interest at the time of

taking. Therefore, any argument as to an unconstitutional taking of lot 244 without just compensation should have been raised at the time the ordinance was enacted and affected the owner in fee.

## II. *Practical Difficulty*

 We next determine whether knowledge of a restrictive zoning ordinance prior to the acquisition of property is sufficient grounds to bar variance petition. The evidentiary burden placed on one who petitions for a variance is distinct from one who may also make a constitutional challenge with regard to the taking of that property. The MBZA argues that the purchase of property which does not meet zoning specifications is a self-imposed burden. That is, the Reinkings cannot claim a hardship based on a condition which they created. A person who agreed to purchase land with knowledge of zoning requirements cannot claim unnecessary hardship from a condition he created. *Board of Zoning Appeals of City of Hammond v. Waskelo,* 240 Ind. 594, 168 N.E.2d 72 (1960).[2] However, where an unnecessary hardship is shown to exist based upon the terms of an ordinance, as they apply to the land, the ability to claim hardship is available to subsequent purchasers as well to the original owner. *Fail,* 355 N.E.2d at 460.

 Changing Indiana case law has expanded the *Waskelo* doctrine. In *Waskelo,* after the passage of a zoning ordinance, and with full knowledge of its use restrictions, the petitioners voluntarily sold a house and a portion of their lot thereby reducing the remaining lot to a smaller size than that required by ordinance. Our supreme court held that the landowners' hardship, if any, would be deemed self-created, and not the result of any invalid application of the zoning ordinance to their property, even though the landowners might have been under a hardship in utilizing the portion of the lot which they retained. However, subsequent decisions have made it clear that the purchase of

---

**2.** Our supreme court has applied the "practical difficulty" test. *The Town of Beverly Shores v. Bagnall,* 590 N.E.2d 1059, 1063 (Ind.1992); see also I.C. 36–7–4–918.5. The practical difficulty standard is similar to, though different from, the undue hardship standard. *See, e.g., Met. Bd. of Zoning v. McDonald's Corp.,* 481 N.E.2d 141, 146 (Ind.Ct.App.1985), *reh. denied,* 489 N.E.2d 143 (Ind.Ct.App.), *trans. denied.*

property with knowledge of use restrictions does not prohibit a purchaser from claiming a special or unnecessary hardship, regardless of who owned the property at the time it was burdened. *See, e.g., Bowman v. Metropolitan Board of Zoning Appeals of Marion County, Div. III,* 165 Ind.App. 212, 331 N.E.2d 739, 742–43 (1975). Therefore, the Reinkings' knowledge of zoning restrictions prior to purchasing lot 244, is insufficient to bar their petition for variance. Whether they met their burden of proving an undue hardship is yet another issue.

### III. Statutory Requirements

The Reinkings appeal from a negative judgment, having borne the burden of proof at trial. *Bagko Dev. Co. v. Damitz,* 640 N.E.2d 67, 72 (Ind.Ct.App.1994). We will not reverse a negative judgment on appeal unless it is contrary to law. *Id.* We will not reweigh the evidence or judge witness credibility. Thus, the Reinkings have the "burden of proving that the evidence is without conflict and leads unerringly to a conclusion opposite that reached by the trial court." *Id.*

There remains the issue of whether the denial of the variance petition overreached the Board's discretionary powers. That is, did the Board's decision rest upon a rational basis or was it arbitrary and capricious. *Porter County Plan Commission v. Burns Harbor Estates,* 437 N.E.2d 1053, 1055 (Ind.Ct.App.1982). The Board, in denying the petition, determined that the variance would be injurious to the public health, safety, morals and general welfare of the community because the proximity of the residence to the street would interfere with pedestrians' and motorists' visibility and increase the probability of an accident. The Board further concluded that the use or value of the area adjacent to the property would be affected in a substantially adverse manner because the proposed residence would not be of similar setback, building style, and lot area as other residences in the subdivision. We find nothing in the record to suggest otherwise and therefore conclude that the Board's denial of the Reinkings' variance petition was orderly, judicious and fundamentally fair.

In reviewing the decision of a board, we are bound by the same standard as the trial court. *Maxey v. Board of Zoning Appeals,* 480 N.E.2d 589, 592 (Ind.App.Ct. 1985). We do not substitute our decision for that of the Board. *Habig v. Harker,* 447 N.E.2d 1114, 1116 (Ind.Ct.App.1983). We will not reweigh the evidence to reach a conclusion different from that of the Board. *Fail,* 355 N.E.2d at 459. The Board, as an administrative body, is presumed an expert in land use. Thus, wide discretion in the granting or denying of zoning variances is given. *Metropolitan Board of Zoning Appeals of Marion County v. Rumple,* 261 Ind. 214, 301 N.E.2d 359, 363 (1973), citing *Metropolitan Board of Zoning Appeals v. Standard Life Insurance Co.,* 145 Ind.App. 363, 251 N.E.2d 60 (1969), *reh. denied.* Zoning regulations cannot be imposed unless they bear a substantial relation to public health, safety, morals, or general welfare. *Board of Zoning Appeals of Decatur v. Decatur Indiana Company of Jehovah's Witnesses,* 233 Ind. 83, 117 N.E.2d 115, 118 (1954).

The granting of a variance by a board of zoning appeals is discretionary even though the petitioner may have satisfied the statutory criteria. *Boffo v. Boone County Board of Zoning Appeals,* 421 N.E.2d 1119, 1123 (Ind.Ct.App.1981), *reh. denied.* To upset the Board's determination when it has denied a variance, we resolve all doubts respecting the evidence in favor of the Board's decision, and determine whether each of the statutory prerequisites has been established as a matter of law. The evidence supporting each prerequisite must be such that no reasonable person could fail to accept the prerequisite as proved. *Standard Life Ins. Co.,* 251 N.E.2d at 61.

These prerequisites are codified in I.C. 36–7–4–918.5:

A board of zoning appeals shall approve or deny variances from the development standards (such as height, bulk, or area) of the zoning ordinance. A variance may be approved under this section only upon determination in writing that:

(1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;

(2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner; and

(3) the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property. However, the zoning ordinance may establish a stricter standard than the "practical difficulties" standard prescribed by this sub-division.

The record shows that the remonstrators produced a letter indicating that the construction of a dwelling on the corner of Redfern and Keystone would, "create a serious traffic hazard due to decreased visibility and interference of orderly and safe traffic flow." The Reinkings presented a staff report which indicated that the construction on Lot 244 is in complete compliance with the Clear Sight Triangular.[3] They also introduced the testimony of Ms. Tracy, a staff worker, who stated, "the clear sight triangle is maintained, and is clear as proposed by the submitted site plan." The staff workers further testified that:

> The house being proposed since it is oriented to Redfern Drive, and it would maintain the same setback from Keystone Avenue that was originally proposed in the '56 plat, and the fact due to the fact that no other houses can be constructed further to the west, Staff believes that further more that no negative impact would occur upon any other parties with in the subdivision or in the area.

Although there is conflicting evidence, we will not reweigh such evidence to reach a conclusion different than that of the Board. The evidence submitted by the Reinkings does not disturb the trial court's order nor establishes the statutory requirements of I.C. 36-7-4-918.5. Accordingly, the findings support the judgment and the judgment is not clearly erroneous.

Affirmed.

DARDEN, J., concurs.

SULLIVAN, J., concurs in result as to Part I and concurs as to Parts II and III.

---

**3.** The Clear Sight Triangle is formed by the street right-of-way lines, the pavement edge of the driveway and the line connecting points 25–feet from the intersection of such street right-of-way lines and pavement edge lines.